Adelaide Clifford, Respondent, *v.* Denver and Rio Grande Railroad Company, Appellant.

Evidence — Waiver under Section 836, Code Civ. Pro., of Provisions of Section 834, Relating to Patient's Secrets, by Taking Physician's Deposition — When Such Act Is Equivalent to Waiver on the Trial or by Stipulation. Section 836 of the Code of Civil Procedure, relating to waivers of the provisions of section 834 prohibiting the disclosure of the secrets of a patient, does not permit the plaintiff in an action for damages for personal injuries to take, under a commission, the testimony of his physician as to confidential material facts, and then prevent such evidence from being read before the jury solely upon the ground that it would divulge private matters; the limitation of waivers to such as are made in open court on the trial, or by the stipulation of the attorneys for the respective parties, should be so construed as to promote its object, which was to prevent waivers by contract long before the commencement of the action, and not to interpose an obstacle to the administration of justice by the suppression of facts already made public by the

patient himself in a legal proceeding. While the examination of a witness under a commission cannot be regarded for all purposes as a part of the trial, still the taking of privileged testimony to be used as evidence by either party is so much a part of it as to constitute a waiver made "on the trial;" and where interrogatories and cross-interrogatories are prepared and signed by the attorneys for the respective parties, calling for the precise information which the statute keeps secret unless waived, such acts also constitute a waiver by "stipulation of the attorneys of the respective parties;" the exclusion, therefore, as incompetent of the deposition of plaintiff's physician, offered in evidence by defendant, the plaintiff having failed to introduce it and objected to its introduction upon the ground that it divulged facts which the witness acquired in his capacity as physician, constitutes reversible error.

*Clifford* v. *Denver & R. G. R. R. Co.*, 111 App. Div. 513, reversed.

(Argued April 9, 1907; decided April 30, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 16, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

Upon the trial of this action evidence was given tending to show that the plaintiff, while a passenger on a train of the defendant at Alamosa, Colorado, met with an accident caused wholly by its negligence. Whether she was injured internally was sharply contested. During the two nights immediately following the accident she assisted in the performance of a theatrical company, of which she was a member, acting a juvenile part, which required her "to dance quite a good deal." At the close of the performance on the second night, according to her testimony, she fell upon the stage, and after that could work no more for many months. The jury found a substantial verdict in her favor, and the judgment entered thereon was affirmed by the Appellate Division, two of the justices dissenting. The defendant appealed to this court.

*Rush Taggart* and *F. C. Nicodemus, Jr.*, for appellant. The plaintiff waived her privilege under sections 834 and 836 of the Code of Civil Procedure in procuring Dr. Hanson's deposition, and, therefore, his evidence was competent.

" The patient cannot use this privilege both as a sword and a shield." (*McKinney* v. *G. S., etc., R. R. Co.*, 104 N. Y. 352; *Morris* v. *N. Y., O. & W. R. Co.*, 148 N. Y. 88; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 78; *Matter of Coleman*, 111 N. Y. 77; *Powers* v. *M. S. Ry. Co.*, 105 App. Div. 358; *Cohen* v. *C. L. Ins. Co.*, 9 J. & S. 296; *Rosseau* v. *Bleau*, 131 N. Y. 107; *Marx* v. *M. S. Ry. Co.*, 56 Hun, 575; *People* v. *Ballard*, 134 N. Y. 303.)

*Isaac N. Jacobson* and *David May* for respondent. The respondent did not waive the privilege accorded to her by section 834 of the Code of Civil Procedure. (Code Civ. Pro. § 836; *Cudlip* v. *N. Y. E. J. Pub. Co.*, 180 N. Y. 85.)

Vann, J.   Five days after the plaintiff was injured she went to St. Mary's Hospital in Grande Junction, Colorado, where she was treated by Dr. Hanson, a physician and surgeon. After issue was joined she caused a commission to be issued for the examination of the doctor as a witness in her behalf. Interrogatories prepared by her counsel and cross-interrogatories prepared by the counsel for the defendant were annexed to the commission, which was duly executed and returned. The plaintiff rested without reading any part of the testimony thus taken, but when the case was with the defendant its counsel offered the deposition in evidence and was permitted to read the answers to the first four direct interrogatories, which showed that the witness was a physician and surgeon and that he attended the plaintiff for four or five days while she was in the hospital. The answers to the rest of the direct interrogatories and to the most of the cross-interrogatories were objected to by the plaintiff and excluded as incompetent, because the witness divulged " facts which he acquired in his professional capacity as physician to the plaintiff."

The direct interrogatories called upon Dr. Hanson to state whether he examined the plaintiff and what the examination disclosed ; whether she was suffering from injuries and if so to describe them ; whether she complained of pain and if so

of what kind; if she was suffering from shock, to describe the same fully and in detail; whether from the information thus acquired he could state with reasonable certainty that the injuries were of a permanent nature, etc., etc.

The cross-interrogatories objected to called on the witness to state whether the plaintiff complained of any pain other than that caused by pleurisy; if there was any trouble except pleurisy, to state its nature; if she was suffering from inflamed ovaries, whether such a condition could result from an external blow or shock so slight as to leave no external sign of injury, etc., etc. Each question of both series was read by itself and each ruling excluding the answer upon the ground stated was separately excepted to.

The Revised Statutes formerly provided and the Code of Civil Procedure now provides that a physician "shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity." (3 R. S. [6th ed.] p. 671, § 119; Code Civ. Pro. § 834.)

The Revised Statutes, however, did not provide whether or when or how the patient could waive his right to object to the disclosure. The first provision that we find relating to that subject appeared in the Code of Civil Procedure, as first enacted, which provided that the prohibition should "apply to every examination of a person as a witness, unless" it was "expressly waived" by the patient. (L. 1876, ch. 448; L. 1877, ch. 416, § 836.)

In 1891 it was provided that the prohibition against disclosure should "apply to any examination of a person as a witness unless the provisions thereof are expressly waived on the trial or examination" by the patient. A physician was further authorized to disclose certain information, somewhat limited in character, acquired in attending a patient since deceased, "when the provisions of section 834 have been expressly waived" on the "trial or examination by the personal representatives of the deceased patient." (L. 1891, ch. 381.)

An amendment made in 1892 is not now important, but for convenience of examination we cite the Laws of 1892, ch. 514.

In 1893 the right to expressly waive the restriction was extended when the patient was deceased to "the surviving husband, widow or any heir at law or any of the next of kin." The following provisions were added : " But nothing herein contained shall be construed to disqualify an attorney in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate from becoming a witness, as to its preparation and execution in case such attorney is one of the subscribing witnesses thereto. In an action for the recovery of damages for a personal injury the testimony of a physician or surgeon attached to any hospital, dispensary or other charitable institution as to information which he acquired in attending a patient in a professional capacity, at such hospital, dispensary, or other charitable institution shall be taken before a referee appointed by a judge of the court in which such action is pending; provided, however, that any judge of such court at any time in his discretion may, notwithstanding such deposition, order that a subpœna issue for the attendance and examination of such physician or surgeon upon the trial of the action." (L. 1893, ch. 295, amending Code Civ. Pro. sec. 836.)

In 1899 the section was left unchanged except that the following addition was made thereto: " The waivers herein provided for must be made in open court, on the trial of the action, or proceeding, and a paper executed by a party prior to the trial, providing for such waiver shall be insufficient as such a waiver. But the attorneys for the respective parties, may, prior to the trial, stipulate for such waiver, and the same shall be sufficient therefor." (L. 1899, ch. 53.)

In 1904 sections 834 and 836 were so amended as to extend the provisions thereof to professional or registered nurses, but no other change was made. (L. 1904, ch. 331.)

Thus legislation, starting with no regulation upon the subject of waiver, in 1877 allowed an express waiver, in 1891

23

an express waiver "upon. the trial or examination," and since 1899 an express waiver "upon the trial or examination" when made in open court, with no right to waive, by a paper executed prior to the trial, except by the stipulation of the attorneys for the respective parties. The prohibition applies "to any examination of a person as a witness," unless it is waived as thus provided.

It must be conceded that the language of the statute now in force, when read by itself, is broad enough to justify the rulings of the trial court. However, in order to learn the meaning of a statute which has been frequently amended, it is not always enough to read the statute alone without searching for the reasons which led to the various amendments. When a law works well and satisfies the judgment of the bar and the public, there is no occasion for change; but when something has been overlooked and the defect is discovered by the practical test of litigation, the legislature is apt to respond. Changes in legislation upon a subject, therefore, should be studied in connection with the decisions of the courts relating thereto, so as to see whether the action of the courts led to the action of the legislature and thus to interpret the command of the statute in the light of the evil it sought to remedy.

Even under the Revised Statutes it was held that although the rule was peremptory, still as it was made for the benefit of the patient he could waive it and allow the physician to testify. (*Cahen* v. *Continental Life Ins. Co.*, 9 J. & S. 296, 304.)

During the long period when an express waiver was allowed, but no method was prescribed, the courts upheld any method by which the patient clearly expressed an intention to waive his right to object. Acts under some circumstances, silence under others, declarations both verbal and written, upon the trial and in advance of it, were held sufficient. We cite a few of the earlier cases to illustrate the subject before we come to those decisions which, as we think, induced the legislature to make the changes relied upon by

the respondent to sustain the rulings in question. (*Matter of Coleman*, 111 N. Y. 220, 227 ; *Hoyt* v. *Hoyt*, 112 N. Y. 493 ; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 77, 85 ; *Masterton* v. *Boyce*, 6 N. Y. Supp. 65, 69 ; *Marx* v. *Manhattan Ry. Co.*, 10 N. Y. Supp. 159 ; *Matter of Freeman*, 46 Hun, 458, 463.)

In the course of time certain corporations insisted upon written waivers in contracts of life insurance made long in advance, as it was expected, of the death of the insured. Thus in a case decided in 1894 the application, which was made a part of the contract, contained the following stipulation : " And for myself and for any person accepting or acquiring any interest in any benefit certificate issued on this application, I hereby expressly waive any and all provisions of law now existing, or that may hereafter exist, preventing any physician from disclosing any information acquired in attending me in a professional capacity, or otherwise, or rendering him incompetent as a witness in any way whatever, and I hereby consent and request that any such physician testify concerning my health and physical condition, past, present and future." It was held that such a waiver was effective and had reference to a trial after the death of the insured, as there could be no occasion to use it until then. (*Foley* v. *Royal Arcanum*, 78 Hun, 222, 227.)

In 1895 the same court held the same way in a case where it was agreed in an application for life insurance that " the provisions of section 834 of the Code of Civil Procedure of the State of New York and of similar provisions in the laws of other states, are hereby waived, and it is expressly consented and stipulated that in any suit on the policy herein applied for, any physician who has attended or may hereafter attend the insured, may disclose any information acquired by him in any wise affecting the disclosures and warranties herein made." (*Dougherty* v. *Metr. Life Ins. Co.*, 87 Hun, 15, 17.)

In deciding the case last cited the court said : " The statute imposed silence upon the physician for the protection of the

patient. The legislature locked up the secret and gave the key to the patient. He can forego the privilege and unlock the mouth of the doctor. The statute requires that to be done expressly upon the trial, but there is no method prescribed for the accomplishment of the object. * * * The reasonable construction of the statute, therefore, is that the provisions are expressly waived upon the trial if a proper stipulation to that effect be produced thereat and entered upon the record regardless of the time when the waiver was executed."

A similar stipulation in an application for a policy considered by one of the Federal courts in 1888 was held to be binding on the beneficiary. The court said : " As the patient is at liberty to waive the privilege which the law affords him, it appears to me that it is immaterial whether the patient waives the privilege by calling the physician to testify in his behalf, or whether he waives it, as in this case, by a clause contained in the contract on which the suit is brought; and if the patient himself waives the privilege by a clause contained in the contract, that waiver, in my judgment, is binding on any one who claims under the contract, whether it be the patient himself or his representative." (*Adreveno* v. *Mutual Reserve Fund Life Assoc.*, 34 Fed. Rep. 870.) While this court took a different view when the question reached it, that was not until after the amendment of 1899 had been passed. (*Holden* v. *Metr. Life Ins. Co.*, 165 N. Y. 13, reversing 11 App. Div. 426.)

In the meantime it seemed clear, inasmuch as four courts had held a waiver by contract good, that in a short time no policy of life insurance would be written unless a waiver of the statute was made part of the contract, and, hence, the legislature provided that the waiver " must be made in open court on the trial of the action or proceeding and a paper executed by a party prior to the trial, providing for such waiver, shall be insufficient as such a waiver." It added, however, that " the attorneys for the respective parties " might " prior to the trial stipulate for such waiver." The

object of the amendment, in our judgment, was to meet the situation created by the underwriters and these decisions, by preventing the virtual repeal of the statute as to an extensive class of contracts. (*Holden Case, supra.*) But one act was specified in the limitation, and that was the execution of a paper by a party before the trial. Clearly, the legislature did not mean that the patient could not waive the statute by calling the physician and examining him at the trial, or by not objecting if the other party called him. We think it was not intended, in the absence of any specification to that effect, to prevent other acts from constituting a waiver when the necessary result thereof would take the case out of the spirit of the statute. The object of section 834 is to prevent the disclosure of delicate and confidential matters, which might humiliate the patient in his lifetime and disgrace his memory when dead, so as to enable him to consult a physician in safety, knowing that his lips would be sealed by the law' until he, himself, removed the seal. When, however, the patient forces the physician to tell all he knows upon the subject, and thus publishes to the world all that he might have kept secret, he no longer needs the protection of the statute and withdraws himself from the spirit of the prohibition. That is the logical and necessary effect of such an act, and if the legislature had intended to prevent that result we think it would have said so in specific terms.

The subject is illustrated by a case decided in this court prior to the amendment of 1899, in which it appeared that the plaintiff had sued a railroad company to recover damages for personal injuries, and upon the first trial of the action she called her attending physician, who testified as to all the facts bearing upon her physical condition learned by him while treating her, but upon the second trial, when the same witness was called by the defendant to testify to the same facts, his evidence was excluded. This court, however, held that the evidence should have been received, and the judges, with one exception, united with Chief Judge RUGER in saying: "The patient cannot use this privilege both as a sword and a shield,

to waive when it inures to her advantage and wield when it does not. After its publication no further injury can be inflicted upon the rights and interests which the statute was intended to protect and there is no further reason for its enforcement. The nature of the information is of such a character that when it is once divulged in legal proceedings it cannot be again hidden or concealed. It is then open to the consideration of the entire public and the privilege of forbidding its repetition is not conferred by statute. The consent having been once given and acted upon cannot be recalled and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect." (*McKinney* v. *Grand Street, P. P. & F. R. R.* 104 N. Y. 352, 355.)

In another case, decided in 1895, it was held, as correctly stated in the head note, that " when a party who has been attended by two physicians in their professional capacity at the same examination or consultation, both holding professional relations to him, calls one of them as a witness in his own behalf in an action in which the party's condition as it appeared at such consultation is the important question, to prove what took place or what the witness then learned, he thereby waives the privilege conferred by section 834 of the Code of Civil Procedure and loses his right to object to the testimony of the other physician if called by the opposite party to testify as to the same transaction." Judge O'BRIEN wrote for all the judges as follows : " In this case it was the privilege of the plaintiff to insist that both physicians should remain silent as to all information they obtained at the consultation, but she waived this privilege when she called Dr. Payne as a witness and required him to disclose it. The plaintiff could not sever her privilege and waive it in part and retain it in part. If she waived it at all it then ceased to exist, not partially but entirely. The testimony of Dr. Payne having been given in her behalf every reason for excluding that of his associate ceased. The whole question turns upon the legal consequence of the plaintiff's act in calling one of

the physicians as a witness. She then freely uncovered and made public what before was private and confidential. It amounted to a consent on her part that all·who were present at the interview might speak freely as to what took place. The seal of confidence was removed entirely, not merely broken into two parts and one part removed and the other retained." (*Morris* v. *N. Y., O. & W. Ry. Co.*, 148 N. Y. 88, 92.)

The amendment of 1899 must be read in the light of the object of the statute which was to prevent the disclosure of a patient's secrets against his will, not to interpose an obstacle to the administration of justice by suppressing facts already made public by the patient himself in a legal proceeding. The legislature did not intend to allow a party to cause a record to be made and filed in a public office in which the testimony of his physician, taken at his instance, is set forth at large, stating confidential facts material in a controversy with another party, and then to prevent that evidence from being read before the jury by advancing as his only objection that it would divulge private matters. The language of the section limiting waivers to such as are made in open court on the trial of an action or by the stipulation of the attorneys for the respective parties should be so construed as to promote, not to defeat the purpose of the statute. While there is no doubt that the examination of a witness under a commission cannot be regarded for all purposes as part of the trial, still the taking of testimony to be used as evidence by either party may well be regarded as a part thereof so far as it affects the question now before us. The application for a commission is made in open court, to take evidence to prove or disprove the issue. It is a proceeding authorized by law to compel a witness to give evidence to be used in deciding the case. Although preliminary to the formal trial in point of time, in substance it may be held so much a part of the trial as to comply with the amendment of 1899, passed for the purpose, already pointed out, of preventing waivers by contract made long before the commencement of the action.

(*Schlotterer* v. *Brooklyn & N. Y. Ferry Co.*, 89 App. Div. 508, 510; *Cole* v. *Sweet*, 187 N. Y. 488.)

Moreover, when the plaintiff moved for a commission to examine Dr. Hanson, her attorneys either signed a notice of motion or a stipulation for that purpose. Interrogatories were prepared and signed by her attorneys, calling upon the witness to disclose, in full, information which he had acquired while attending her in a professional capacity. Cross-interrogatories were prepared by the other party at some expense and annexed to the commission. I think that the attorneys for the respective parties thus stipulated a waiver of section 834 as permitted by section 836, for they signed papers, in a legal proceeding taken in the action, which could have no practical effect unless they operated as a waiver. Neither the form nor the contents of the stipulation is prescribed and hence whatever shows a clear intention to surrender the protection of the statute is sufficient. Interrogatories asking the doctor to tell what his examination of the plaintiff disclosed, to describe her injuries and the like, show an unmistakable intention to make public all the information that he had acquired in attending her. A voluntary disclosure of the privileged testimony is conclusive evidence of an intention to waive the privilege. The questions could not be answered without making a full disclosure and hence they necessarily show that to have been the intention, which is the essence of a waiver. If the plaintiff could thus, through what may fairly be held to be the stipulation of her attorneys, force the doctor to give evidence and could then object to such evidence being used in the only way authorized by law, she could mock the court and bring ridicule upon its process with impunity. The courts should not permit their remedies to be trifled with, nor at the election of one party and to the injury of the other, turned into a vain and empty ceremony. The necessary effect of signing the various papers for the commission, including the direct and cross-interrogatories calling specifically for the precise information which the statute keeps secret unless waived, as I think, constitutes a waiver of the prohibition by the stipu-

lation of the attorneys for the respective parties.    Upon this ground I base my vote for reversal.

The judgment should be reversed and a new trial granted, with costs to abide the event.

O'Brien, Edward T. Bartlett, Haight and Chase, JJ., concur; Cullen, Ch. J., and Hiscock, J., concur on the ground first stated in the opinion.

Judgment reversed, etc.